**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

PATH WIRELESS, LLC,

    Plaintiff,

v.                                          Case No. 3:20-cv-392-J-34JRK

NOKIA OF AMERICA CORP.,

    Defendant.

## REPORT AND RECOMMENDATION[1]

This cause is before the Court on Defendant's Motion to Compel Arbitration and to Stay Case (Doc. No. 9; "Motion"), filed May 26, 2020. After obtaining an extension of time to respond, see Order (Doc. No. 11), Plaintiff filed a response to the Motion on June 23, 2020, see Plaintiff Path Wireless, LLC's Response in Opposition to Defendant Nokia of America Corp.'s Motion to Compel Arbitration and Stay Case (Doc. No. 12; "Response"). With leave of Court, see Order (Doc. No. 16), Defendant filed a reply to the Response on July 27, 2020, see Defendant's Reply in Support of Its Motion to Compel Arbitration and to Stay Case (Doc. No. 17; "Reply"). The Motion is referred to the undersigned for a report and recommendation regarding an appropriate resolution. Having considered the procedural posture of the case, the above filings, and all relevant matters, the undersigned recommends that the Motion be granted for the reasons discussed below.

---

[1] "Within 14 days after being served with a copy of [a report and recommendation on a dispositive issue], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." Id. A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. See Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

## I. Procedural History/Background

Plaintiff commenced this action on April 17, 2020 by filing a Complaint for Damages (Doc. No. 1; "Complaint"). Defendant responded to the Complaint by filing the instant Motion. In general, Plaintiff's claims arise from Defendant's alleged breach of contract. The Complaint's allegations are summarized below.

Plaintiff is a company that "provides installation and repair services on top of cellular telephone towers throughout the southeastern United States." Complaint at 3 ¶ 5. Defendant is a telecommunications company. In June 2019, Defendant "ran into difficulties" on a project it was working on for Cellular South, Inc. (doing business as C Spire) ("C Spire Project"), id. ¶ 6, which appears to also be a telecommunications company. (The C Spire Project apparently involved the installation of cellular towers.) On July 17, 2019, Defendant "asked [Plaintiff] to step in and repair the defects in the prior installations on the C Spire towers on an expedited basis . . . ." Id. ¶ 7.

No contract was signed before Plaintiff began work on the C Spire Project "[d]ue to [Defendant's] specific needs and the time constraints created by the significant delays prior to [Plaintiff's] involvement." Id. at 3-4 ¶ 8. Instead, the parties engaged in a process through which Plaintiff's work would be reviewed by Defendant a number of times and ultimately approved by Defendant's "accounts payable team . . . for a 'Purchase Document' to be issued and then place[d] . . . in line for payment by [Defendant]." Id. at 4-6 ¶¶ 11-15.

Defendant "had not paid for a single week of [Plaintiff's] services through the end of September of 2019, all of which had been approved through the process set forth above." Id. at 6 ¶ 16. On October 1, 2019, Plaintiff and Defendant signed a Frame Agreement, which Defendant "claimed would be the framework for specific contracts on future

- 2 -

projects." Id. ¶¶ 17-18. "The Frame Agreement was structured so that a separate Project Agreement would be signed that included the scope, pricing, and approval process for all of [Plaintiff's] future projects for [Defendant]." Id. ¶ 17. The parties did not sign any future Project Agreements. Id. ¶ 18.

After the Frame Agreement was signed, Defendant agreed to pay Plaintiff for its work through August 25, 2019. Id. at 7 ¶ 19. On October 14, 2019, Defendant sent Plaintiff 116 purchase orders for the work performed from July 17, 2019 through August 25, 2019. Id. ¶ 20. The purchase orders were dated October 10, 2019. Id.

On or around October 29, 2019, Defendant "told [Plaintiff] it was no longer going to work on the C Spire Project." Id. ¶ 22. At that time, Defendant had not paid Plaintiff for three months of work on the C Spire Project. Id. "After [Plaintiff] demanded payment for $712,215.00, plus accumulated interest, on March 6, 2020, [Defendant] alleged for the first time that [Plaintiff's] work was not performed adequately." Id. at 8 ¶ 25. Plaintiff alleges that "[d]espite numerous levels of approval of [Plaintiff's] services, and no communications of any defects, [Defendant] refuses to pay for the services, in the amount of at least $712,215.00." Id. at 9 ¶ 31.

Plaintiff asserts three counts against Defendant: 1) breach of contract; 2) breach of covenant of good faith and fair dealing; and 3) unjust enrichment. See id. at 9-11.

## II. Motion

In the Motion, Defendant argues that Plaintiff's claims must be arbitrated because the Frame Agreement contains an arbitration clause. Motion at 1-3, 11-14; see Frame Agreement (Doc. No. 9-2) at 41. According to Defendant, the parties agreed that an arbitrator must decide in the first instance whether Plaintiff's claims are arbitrable. Motion

at 14-16; see also Reply at 1, 3. Defendant thus contends that the issue of whether the Frame Agreement encompasses Plaintiff's claims is an issue of arbitrability to be decided by the arbitrator, not the Court. Motion at 16-17; see also Reply at 1-4. As to whether the Frame Agreement is unenforceable because it was executed after Plaintiff started working on the C Spire Project, Defendant asserts the Frame Agreement "contains a broad merger clause stating that it 'contains the entire understanding between the Parties' and '[a]ll previous correspondence and documents exchanged between the Parties in respect of these Services prior to the date of th[e] Frame Agreement are superseded by th[e] Frame Agreement.'" Id. at 2 (alteration in original); see Frame Agreement at 11, art. 2.3.

Responding, Plaintiff argues that "[b]ecause no Project Agreement was signed, the Frame Agreement is not an enforceable contract with respect to the C Spire Project." Response at 12. It follows, according to Plaintiff, that the arbitration clause in the Frame Agreement is not valid as to the clams raised in the Complaint. Id. at 1, 10; see also id. at 12 (asserting that "[t]he C Spire Project is not [c]overed by the Frame Agreement" and that the Frame Agreement did not become effective until "ten weeks after [Plaintiff's] work began on the C Spire Project" (emphasis omitted)); id. at 11 (contending that "[t]o be applicable, the scope of the work covered by the Frame Agreement must be set forth in a

- 4 -

Project Agreement, which does not exist in this case"); id. at 13 (arguing that "[t]he Frame Agreement does not apply to all services provided by [Plaintiff]").[2]

### III. Discussion

When determining whether to compel arbitration, generally a court considers so-called "gateway matters." Anders v. Hometown Mortg. Servs., Inc., 346 F.3d 1024, 1027 (11th Cir. 2003) (citing Green Tree Fin. Corp v. Bazzle, 539 U.S. 444, 452 (2003)). In other words, the default rule is that a court should decide "such issues as are essential to defining the nature of the forum in which a dispute will be decided." Musnick v. King Motor Co., 325 F.3d 1255, 1261 (11th Cir. 2003) (quoting Larry's United Super, Inc. v. Werries, 253 F.3d 1083, 1085-86 (8th Cir. 2001)). Specifically, the following factors should be considered: 1) whether a valid written agreement to arbitrate exists; 2) whether an arbitrable issue exists; and 3) whether the right to arbitrate has been waived. Seifert v. U.S. Home Corp., 750 So. 2d 633, 636 (Fla. 1999) (naming factors); see Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1370-79 (11th Cir. 2005) (discussing validity of agreement and whether employment claims can be arbitrable); S & H Contractors, Inc. v. A.J. Taft Coal Co., 906 F.2d 1507, 1514 (11th Cir. 1990) (discussing waiver of the right to arbitrate). There is a strong federal policy favoring arbitration; thus, the Federal Arbitration Act ("FAA") "establishes that, as a matter of federal law, any doubts concerning

---

[2] Alternatively, Defendant also argues that if the Court finds the Frame Agreement does not apply, Plaintiff must nonetheless arbitrate its claims pursuant to the arbitration provision in Defendant's "General Terms and Conditions," which according to Defendant, were incorporated into the Purchase Orders that Defendant issued to Plaintiff. See Motion at 18-20; Reply at 4-6. Responding, Plaintiff contends the General Terms and Conditions were not properly incorporated into the Purchase Orders. See Response at 14-15. Plaintiff also asserts the arbitration clause in the General Terms and Conditions is unenforceable because it requires that the arbitration be held in Finland and follow Finnish law, even though both parties are from the United States and the work at issue was performed in Mississippi. Id. at 15-16. Because the undersigned finds that pursuant to the Frame Agreement the Court cannot decide the issue of arbitrability, it is unnecessary to decide whether arbitration should be compelled pursuant to the General Terms and Conditions.

- 5 -

the scope of arbitrable issues should be resolved in favor of arbitration . . . ." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).

"Under the [FAA], arbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms." Henry Schein, Inc. v. Archer & White Sales, Inc., 139 S.Ct. 524, 529 (2019) (citing Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 67 (2010)). The FAA "allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." Id. at 527 (citations omitted); see also Jones v. Waffle House, Inc., 866 F.3d 1257, 1264 (11th Cir. 2017) (recognizing that "parties may agree to arbitrate gateway questions of arbitrability including the enforceability, scope, applicability, and interpretation of the arbitration agreement" (citing Rent-a-Ctr., 560 U.S. at 68-69)). And, "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." Henry Schein, 139 S.Ct. at 528. But, "courts 'should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so.'" Id. at 531 (quoting First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995)). "Questions of arbitrability . . . stay with the court unless there is clear and unmistakable evidence that the parties intended to submit such questions to an arbitrator." JPay, Inc. v. Kobel, 904 F.3d 923, 930 (11th Cir. 2018) (citation and internal quotation marks omitted), cert. denied, 139 S. Ct. 1545 (2019); see also Metro. Life Ins. Co. v. Bucsek, 919 F.3d 184, 191 (2d Cir.) (stating that "in the absence of an arbitration agreement that clearly and unmistakably elects to have the resolution of the arbitrability of the dispute decided by the arbitrator, the question whether the particular dispute is subject to an arbitration agreement 'is typically an issue for judicial

determination'" (quoting Granite Rock Co. v. Int'l Brotherhood of Teamsters, 561 U.S. 287, 296 (2010))), cert. denied, 140 S. Ct. 256 (2019).

In Henry Schein, the parties agreed to arbitrate "[a]ny dispute arising under or related to [their a]greement (except for actions seeking injunctive relief and disputes related to trademarks, trade secrets, or other intellectual property . . .)." 139 S. Ct. at 528. A suit was filed in a United States District Court, and one party "invoked the [FAA] and asked the District Court to refer the parties' antitrust dispute to arbitration." Id. But, the opposing party objected to arbitrating the dispute "because . . . [the] complaint sought injunctive relief, at least in part." Id. Relying on a judicially- created "wholly groundless" exception for denying requests to compel arbitration, the District Court found that the arbitration request was wholly groundless and denied it. Id. The United States Court of Appeals for the Fifth Circuit affirmed. Id. The United States Supreme Court then reversed, finding that the "'wholly groundless' exception is inconsistent with the text of the [FAA] and with [Supreme Court] precedent." Id. at 529; see also id. at 531. The Court determined that "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." Id. at 531. The Court clarified, however, that "before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists." Id. at 530. Accordingly, the Court held that "if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." Id. Ultimately, because the Fifth Circuit had not previously addressed whether the contract at issue in Henry Schein "in fact delegated the arbitrability question to an arbitrator," the case was remanded with instructions to address that issue in the first instance. Id. at 531.

On remand, the Fifth Circuit found that the arbitration provision did not clearly and unmistakably delegate to the arbitrator the question of arbitrability of claims for injunctive relief because the arbitration agreement exempted actions seeking injunctive relief. Archer & White Sales, Inc. v. Henry Schein, Inc., 935 F.3d 274, 279-82 (5th Cir. 2019), cert. denied, No. 19-1080, 2020 WL 3146709 (U.S. June 15, 2020), cert. granted, No. 19-963, 2020 WL 3146679 (U.S. June 15, 2020).[3] The provision did incorporate the AAA arbitration rules, which expressly provide that the arbitrator has "the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." Id. at 279-80 (quoting AAA Rule 7(a)). So, the arbitration agreement "delegat[ed] the threshold arbitrability inquiry to the arbitrator for at least some category of cases." Id. at 280. But, the Fifth Circuit found that the "carve-out clause"—excepting actions seeking injunctive relief—did not incorporate the AAA rules; therefore, the parties did not clearly and unmistakably agree to arbitrate the arbitrability of those types of actions. Id. at 280-82; see also NASDAQ OMX Grp., Inc. v. UBS Secs., LLC, 770 F.3d 1010, 1031-32 (2d Cir. 2014) (finding that the court could not "conclude that [the parties] clearly and unmistakably committed questions of arbitrability to an arbitrator rather than the court" because although the arbitration agreement referenced the AAA rules, it was subject to a qualifying provision that could arguably exempt the parties' dispute from arbitration). In other instances when

---

[3] The Supreme Court denied certiorari, in relevant part, on the issue of whether an arbitration agreement that provides for certain arbitration rules to apply if there is an arbitration clearly and unmistakably delegates to the arbitrator disputes about arbitrability. See Conditional Cross-Petition for a Writ of Certiorari, Archer & White Sales, Inc. v. Henry Schein, Inc., No. 19-1080, 2020 WL 1391910, at *I. Certiorari was granted on the issue of whether a provision exempting certain claims from arbitration negates an otherwise clear and unmistakable delegation clause. See Petition for a Writ of Certiorari, Henry Schein, Inc. v. Archer & White Sales, Inc., No. 19-963, 2020 WL 529195, at *I.

- 8 -

parties specifically incorporated the AAA rules in an arbitration clause and either did not include any carve-out clauses or included carve-out clauses that still incorporated the AAA rules, courts have determined that the parties clearly and unmistakably agreed to arbitrate arbitrability. See, e.g., Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship, 432 F.3d 1327, 1332 (11th Cir. 2005); Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp., 748 F.3d 249, 262-63 (5th Cir. 2014); Petrofac, Inc. v. DynMcDermott Petroleum Operations Co., 687 F.3d 671, 675 (5th Cir. 2012) (collecting cases).

Here, as an initial matter, the validity of the arbitration clause in the Frame Agreement is addressed. Finding that it is valid, the undersigned determines that the scope of the Frame Agreement (that is, whether Plaintiff's claims are covered by the Frame Agreement) must be decided by an arbitrator.

The arbitration clause of the Frame Agreement states as follows:

> Any dispute, controversy or claim arising out of or relating to th[e] Frame Agreement shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce [("ICC Rules")] by one or more arbitrators appointed in accordance with the said [ICC] Rules. The arbitration proceedings shall be held in New York, New York in the English language.

Frame Agreement at 41, art. 32.2 (emphasis added).

The ICC Rules require that the gateway question of arbitrability be determined by an arbitrator. Specifically, Article 6(3) of the ICC Rules provides as follows:

> If any party against which a claim has been made does not submit an Answer, or if any party raises one or more pleas concerning the existence, validity or scope of the arbitration agreement or concerning whether all of the claims made in the arbitration may be determined together in a single arbitration, the arbitration shall proceed and any question of jurisdiction or of whether the claims may be determined together in that arbitration shall be decided directly by the arbitral tribunal, unless the Secretary General refers the matter to the Court for its decision pursuant to Article 6(4).

International Chamber of Commerce [ICC], Arbitration Rules, art. 6(3) (March 1, 2017), https://iccwbo.org/content/uploads/sites/3/2017/01/ICC-2017-Arbitration-and-2014-Mediation-Rules-english-version.pdf (emphasis added).

The undersigned finds that the Frame Agreement, including its arbitration clause, is valid. See Henry Schein, 139 S. Ct. at 530. There is no dispute as to the formation or execution of the contract. Plaintiff does not "claim[ ] that there had at no time existed as between the [p]arties any contractual relation" whatsoever with regards to the Frame Agreement. Mobile Real Est., LLC v. NewPoint Media Grp., LLC, — F. Supp. 3d —, No. 19-CV-11475 (KMK), 2020 WL 2521451, at *9 (S.D.N.Y. May 18, 2020) (first alteration in original) (quoting Interocean Shipping Co. v. Nat'l Shipping & Trading Corp., 462 F.2d 673, 676 (2d Cir. 1972)).[4] Indeed, Plaintiff affirms that the parties entered into the Frame Agreement, which included an arbitration clause, on October 1, 2019. See Pacelli v. Augustus Intel., Inc., — F. Supp. 3d —, No. 20-CV-1011 (LJL), 2020 WL 2395185, at *5 (S.D.N.Y. May 11, 2020) (finding agreement was valid, noting the plaintiffs "admit[ted] that they executed their employment agreements and that those agreements included [an a]rbitration [p]rovision" (citation omitted)). At the core of Plaintiff's disagreement with Defendant is whether the Frame Agreement covers the particular dispute at issue in this case (either because the Frame Agreement does not apply to work done prior to its execution or because no Project Agreements were executed). This is an issue of scope and applicability (i.e. arbitrability), not one of validity. Jones, 866 F.3d at 1264 (recognizing that the enforceability, scope, and applicability are "gateway questions of arbitrability").

---

[4] The Frame Agreement provides that it "is governed by, and shall be construed in accordance with, the laws of the State of New York excluding its choice of law provisions." Frame Agreement at 41, art. 32.1. The parties do not dispute the applicability of New York law in construing the Frame Agreement. See Motion at 4, 11; Response at 10-11 (citing New York law).

Having determined that the arbitration clause is valid, the undersigned now turns to whether the parties have to arbitrate the issue of arbitrability, or whether the Court can decide it. Upon due consideration and in accordance with relevant precedent, the undersigned finds that by referencing the ICC Rules, the broad arbitration clause in the Frame Agreement evinces a "clear and unmistakable" intent of the parties for an arbitrator, not a court, to decide the gateway question of arbitrability. See Shaw Grp. Inc. v. Triplefine Int'l Corp., 322 F.3d 115, 124-25 (2d Cir. 2003) (finding contract at issue clearly and unmistakably demonstrated the parties' intent to arbitrate questions of arbitrability "because the parties' arbitration agreement [was] broadly worded to require the submission of 'all disputes' concerning the [contract] to arbitration, and because it provide[d] for arbitration to be conducted under the rules of the ICC, which assign the arbitrator initial responsibility to determine issues of arbitrability").[5] As noted, the challenges raised by Plaintiff—the scope and applicability of the Frame Agreement—are questions of arbitrability, Jones, 866 F.3d at 1264, which the parties agreed would be decided by an arbitrator. Accordingly, this Court cannot decide whether the parties must arbitrate their particular dispute—that decision is for an arbitrator in the first instance.

---

[5] The specific ICC Rule referenced in Shaw (ICC Rules, art. 6(2)) has since been amended and renumbered, but the current version (ICC Rules, art. 6(3)) is substantively the same in all relevant aspects as the version in place at the time of the Shaw decision. Specifically, the ICC Rule addressed in Shaw stated as follows:

> If the Respondent does not file an Answer . . . or if any party raises one or more pleas concerning the existence, validity or scope of the arbitration agreement, the [International Court of Arbitration ('ICA')] Court may decide, without prejudice to the admissibility or merits of the plea or pleas, that the arbitration shall proceed if it is prima facie satisfied that an arbitration agreement under the [ICC] Rules may exist. In such a case, any decision as to the jurisdiction of the Arbitral Tribunal shall be taken by the Arbitral Tribunal itself. If the [ICA] Court is not so satisfied, the parties shall be notified that the arbitration cannot proceed. In such a case, any party retains the right to ask any court having jurisdiction whether or not there is a binding arbitration agreement.

Shaw, 322 F.3d at 122 (quoting ICC Rules, art. 6(2) (1998)).

## IV. Conclusion

For all of the foregoing reasons, it is

**RECOMMENDED**:

1. That Defendant's Motion to Compel Arbitration and to Stay Case (Doc. No. 9) be **GRANTED**;

2. That the parties be ordered to submit Plaintiff's claims to arbitration in accordance with the Frame Agreement;

3. That this case be **STAYED** pending either a determination by the arbitrator that the claims should not be arbitrated pursuant to the Frame Agreement, or pending completion of substantive arbitration proceedings, whichever occurs; and

4. That the parties be **DIRECTED** to file a joint status report upon the conclusion of the arbitration. That if the arbitration is not completed within 120 days of a final order being entered on the instant Motion, the parties shall file a joint status report at that time and every 120 days thereafter until the arbitration proceedings are completed.

**RESPECTFULLY RECOMMENDED** at Jacksonville, Florida on September 1, 2020.

JAMES R. KLINDT
United States Magistrate Judge

bhc
Copies to:

Honorable Marcia Morales Howard
United States District Judge

Counsel of Record